UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**DONALD WILLIS,**<br><br>Defendant. | Case No. 22-CR-401-02 (APM) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

In 2021, co-defendant Demetrius Minor purchased over 30 firearms from gun shops in Maryland with the intent of unlawfully reselling them for profit. He put them into the hands of felons who are prohibited from possessing them—including his cousin, Defendant Donald Willis, who has accepted responsibility for at least eight (8) of those guns. Indeed, the conspiracy was uncovered only because the defendant used one of those firearms to commit an assault in November 2021; before he was charged in this case, he separately pleaded guilty in the Superior Court to assault with a dangerous weapon and possession of a firearm during a crime of violence and was sentenced to a term of 12 years' imprisonment. For reasons that follow, the government respectfully recommends that this Court sentence the defendant to a term of **36 months' imprisonment** to be followed by three years of supervised release. In addition, because the defendant sought to accept responsibility at the earliest possible juncture and is already serving a substantial, 12-year sentence for a crime that is related to—and was facilitated by—this offense, the government does not oppose the defendant's request that this sentence run concurrently. In support of its recommendation, the government respectfully submits this Memorandum.

I. **FACTUAL BACKGROUND**

*The Factual Proffer*

The factual proffer to which the defendant agreed under oath as part of his July 26, 2023, guilty plea (ECF No. 67) establishes the following uncontested facts:

On November 17, 2021, in Washington, D.C., members of the Metropolitan Police Department were conducting proactive patrol at the intersection of 7th and Girard Streets NE, in Washington, D.C., when they observed an unlawful amount of marijuana inside a black Honda Accord. While searching the vehicle for additional contraband, a firearm was recovered from the glovebox. That firearm was a Ruger 57, 5.7x28mm pistol, bearing a serial number 641-71586 ("**GUN A**"). ATF conducted a trace of **GUN A**, which showed that the Demetrius Minor (the "co-defendant"), who resides in Maryland, was the original purchaser. The firearm was transferred from Engage Armament, a Federal Firearms Licensee (FFL), to the co-defendant on July 28, 2021.

On November 27, 2021, at approximately 1:43 a.m., MPD responded to a call for an aggravated assault near 2319 Chester Street SE, in Washington, D.C. When MPD responded to the location, they encountered an individual later identified as the defendant, Donald Willis, who was armed with a rifle. Defendant Willis ignored multiple commands to drop the rifle, at which time an MPD officer discharged their service weapon. At this time, Defendant Willis dropped the rifle and entered a black BMW X5 and drove away. Defendant Willis eventually exited his vehicle and continuing to flee on foot. Defendant Willis initially evaded MPD, and a Springfield XDS 45, .45 caliber pistol, serial number XS679933 ("**GUN B**") and a cell phone were recovered in his flight path. Defendant Willis was arrested a short time later.

The victim in the assault case, Defendant Willis's ex-wife, later identified the cell phone recovered in the flight path as belonging to Defendant Willis. The victim also stated that

Defendant Willis had been attending a housewarming party at her house when he became agitated and returned with a handgun. At that time, Defendant Willis began pointing the handgun at peoples' heads. Defendant Willis was pushed out of the apartment and the handgun was taken by his stepson. Defendant Willis subsequently returned to the apartment with a rifle and took the handgun back before MPD arrived.

Based on a review of records, **GUN B** was transferred from United Gun Shop, an FFL, to the co-defendant, Demetrius Minor, on August 13, 2021. A National Crime Information Center query revealed that the co-defendant reported **GUN B** stolen to the Montgomery County Police at approximately 9:41 p.m. on November 27, 2021 – about 20 hours after the incident involving Defendant Willis.

In December 2021, ATF Special Agents retrieved copies of the Firearms Transaction Records (ATF Form 4473) from Atlantic Guns, Engage Armament, and United Gun Shop, FFLs located in Rockville, Maryland. The records show that the co-defendant made at least the following purchases:

    i. Between April 6, 2021, and April 16, 2021, (1) a Taurus 9mm PT111 G2A, 9mm pistol bearing serial number ACA475492; (2) a Glock 19X, 9mm pistol bearing serial number BTDV743; and (3) Glock 17 Gen 5, 9mm pistol bearing serial number BTBG105, all from Engage Armament, located in Rockville, Maryland;

    ii. On May 11, 2021, (1) a Glock 26, 9mm pistol bearing serial number BSMB754; and (2) a Glock 43, 9mm pistol bearing serial number AFFN936, both from Engage Armament, located in Rockville, Maryland;

    iii. On June 5, 2021, (1) a Glock 26, 9mm pistol bearing serial number BTEX642; (2) a Glock 27 Gen 3, .40 caliber pistol bearing serial number BTFD468; and (3) a Glock

      43, 9mm pistol bearing serial number AEXZ257, all from Engage Armament, located in Rockville, Maryland;

  iv. On June 9, 2021, (1) a Taurus G3C, 9mm pistol bearing serial number ACB520645; (2) a Pioneer Arms Corp Hellpup, 7.62x39 pistol bearing serial number PAC1150019; and (3) a Taurus G3, 9mm pistol bearing serial number ACA456782, all from Engage Armament, located in Rockville, Maryland;

  v. On June 19, 2021, a Glock 17 Gen 5, 9mm pistol bearing serial number BTNB564 from Engage Armament, located in Rockville, Maryland;

  vi. On June 23, 2021, a Umarex/Heckler & Koch 416D, 22LR rifle bearing serial number HB046753 from Engage Armament, located in Rockville, Maryland;

  vii. On July 16, 2021, a Springfield Armory XD-9, 9mm pistol bearing serial number BY499104 from Engage Armament, located in Rockville, Maryland;

  viii. On July 24, 2021, a Taurus G3, 9mm pistol bearing serial number ABK980872 from Engage Armament, located in Rockville, Maryland;

  ix. On July 28, 2021, (1) a Ruger 57, 5.7x28mm pistol bearing serial number 641-71586 (**GUN A**); and (2) a Glock 20SF, 10mm pistol bearing serial number BSRA376, both from Engage Armament, located in Rockville, Maryland;

  x. On July 31, 2021, a Glock 17 Gen 5 MOS, 9mm pistol bearing serial number BTBT052 from Engage Armament, located in Rockville, Maryland;

  xi. On August 4, 2021, a Taurus G2C, 9mm pistol bearing serial number 1C050673 from Atlantic Guns, located in Rockville, Maryland;

  xii. On August 6, 2021, (1) a Ruger 57, 5.7x28 mm pistol bearing serial number 641-75252; (2) a Glock 31 Gen 3, .357 sig pistol bearing serial number BNWB953;

        and (3) a Springfield Armory Hellcat, 9mm pistol bearing serial number BYS589829, all from Engage Armament, located in Rockville, Maryland;

xiii. On August 13, 2021, (1) a Springfield XDS 45, .45 caliber pistol bearing serial number XS679933 (**GUN B**) from United Gun Shop, located in Rockville, Maryland; and (2) a Taurus G3, 9mm pistol bearing serial number ACG067178 from Atlantic Guns, located in Rockville, Maryland;

xiv. On August 14, 2021, a Glock 19X, 9mm pistol bearing serial number BTYW081 from Atlantic Guns, located in Rockville, Maryland;

xv. On August 17, 2021, a Glock 23, 9mm pistol bearing serial number VCU219 from United Gun Shop, located in Rockville, Maryland;

xvi. On August 21, 2021, a Century Arms Draco, 7.62x39 pistol bearing serial number 21PF-8378 from United Gun Shop, located in Rockville, Maryland;

xvii. On August 26, 2021, (1) a Taurus PT111 G2A, 9mm pistol bearing serial number ACD763836, and (2) Taurus G2S, 9mm pistol bearing serial number ACD835962, both from Engage Armament, located in Rockville, Maryland;

xviii. On August 28, 2021, a Glock 48, 9mm pistol bearing serial number BSTW539 from Engage Armament, located in Rockville, Maryland;

xix. On September 4, 2021, a Taurus PT24/7, 9mm pistol bearing serial number TAN19946 from Atlantic Guns, located in Rockville, Maryland;

xx. On September 15, 2021, a Glock 43X, 9mm pistol bearing serial number BUEH697 from Engage Armament, located in Rockville, Maryland; and

  xxi. On October 5, 2021, (1) a Century Arms Draco, 7.62x39 pistol bearing serial number SV7P004515; and (2) a Glock 23, .40 caliber pistol bearing serial number CFH856, both from United Gun Shop, located in Rockville, Maryland.

 ATF Special Agents consensually interviewed the co-defendant on December 3, 2021; December 6, 2021; and January 26, 2021, all prior to his August 2022 arrest. In the course of those interviews, the co-defendant admitted purchasing firearms and transferring them to other individuals, including Defendant Willis. The co-defendant told the ATF Special Agents that he would meet Defendant Willis in the parking lot of a park on MacArthur Boulevard NW in Washington, D.C., to transfer firearms to him. The location where Defendant Willis and the co-defendant met was near Defendant Willis's place of employment at the time.

 Cell-site location data for Defendant Willis's and the co-defendant's cell phones showed their devices near one another in the area of MacArthur Boulevard NW in Washington, D.C., on August 19, 2021; August 27, 2021; September 7, 2021; and September 27, 2021.

 Defendant Willis's financial records also illustrate that around the same time as meeting with the co-defendant, he would make significant cash withdraws from his bank account.

 For example, the co-defendant picked up a firearm from United Gun Shop on August 17, 2021. Two days later, on August 19, 2021, historical cell-site location data places Defendant Willis and the co-defendant together near MacArthur Boulevard, NW, in Washington, D.C. On that same day, Defendant Willis made three cash withdraws totaling $606.

 On August 21, 2021, the co-defendant picked up a firearm from United Gun Shop and then, on August 26, 2021, the co-defendant picked up two firearms from Engage Armament. On August 23, 2021, Defendant Willis withdrew $5,000 from his bank account, and then on August 24, 2021, he made two withdrawals of $3,000. On August 27, 2021, historical cell-site location data places

6

Defendant Willis and the co-defendant together near MacArthur Boulevard, NW, in Washington, D.C.

On August 28, 2021, the co-defendant picked up a firearm from Engage Armament. On September 4, 2021, the co-defendant picked up a firearm from Atlantic Guns. Three days later, on September 7, 2021, Defendant Willis made four cash withdraws of $202.25, totaling $809. That same day, September 7, 2021, historical cell-site location data places Defendant Willis and the co-defendant together near MacArthur Boulevard, NW, in Washington, D.C.

Of the 34 above-listed firearms, the co-defendant retained possession of only two—(1) the Glock 17 Gen 5 MOS, 9mm pistol bearing serial number BTBT052, which he purchased from Engage Armament on July 31, 2021; and (2) the Taurus PT 24/7, 9mm pistol bearing serial number TAN19946, which he purchased from Atlantic Guns on September 4, 2021. Numerous of the other, unaccounted-for firearms have been recovered by law enforcement in the Washington, D.C. area.

During the conspiracy, the co-defendant transferred at least eight (8) of the above-listed firearms to Defendant Willis. At all relevant times, the co-defendant was a resident of the State of Maryland, and Defendant Willis was a resident of the District of Columbia. The co-defendant and Defendant Willis are cousins, and each had knowledge of where the other resided.

All the aforementioned firearms, including **GUN B**—which was recovered in connection with Defendant Willis's arrest on November 27, 2021—constitute firearms pursuant to Title 18, United States Code, Section 921(a)(3). They were not manufactured in the District of Columbia and therefore traveled in or affected interstate commerce.

### *The Defendant's Acknowledgements*

As part of his guilty plea, the defendant also acknowledged that: (1) he provided money

7

to the co-defendant, Demetrius Minor, in exchange for at least eight (8) firearms that the co-defendant purchased from Federal Firearms Licensees located in the State of Maryland; (2) he is not and has never been a licensed firearm dealer, importer, manufacturer, or collector—and in fact has been legally prohibited from possessing firearms since at least 1993; (3) at all times relevant to the conspiracy, he resided in Washington, D.C., while the co-defendant, Demetrius Minor, resided in the State of Maryland, and each had knowledge of where the other resided; and (4) he acted voluntarily and on purpose, not by mistake or accident.

## II.  PROCEDURAL HISTORY

On July 29, 2022, the United States District Court for the District of Columbia issued a four-count criminal complaint charging co-defendant Demetrius Minor for his role in the firearms trafficking scheme. (ECF No. 1). On December 13, 2022, a federal grand jury returned an indictment charging the co-defendant with those same four counts, specifically: Engaging in the Business of Dealing in Firearms Without a License, in violation of 18 U.S.C. § 922(a)(1)(A) (Count One); Illegal Interstate Transfer of Firearms, in violation of 18 U.S.C. § 922(a)(5) (Count Two); Sell or Dispose of a Firearm to a Prohibited Person, in violation of 18 U.S.C. § 922(d)(1) (Count Three); and Conspiracy to Commit an Offense Against or to Defraud the United States, in violation of 18 U.S.C. § 371 (Count Four). (ECF No. 32). Defendant Donald Willis was joined to the case at the indictment stage, charged in Count Four only. At this point, the defendant's Superior Court case had already resolved, with the defendant having been sentenced on November 10, 2022, to 12 years' imprisonment.[1] *See* Superior Court criminal case number 2021 FD3 006773.

---

[1] There are two points to note with respect to the Superior Court sentence. First, on September 1, 2023, a Superior Court judge reduced the sentence to 11 years and 86 days to give effect to the sentencing judge's intention that the defendant receive credit for time served in both case numbers 2021 FD3 006773 (the case in which the defendant pleaded guilty and was sentenced) and 2019 CF2 008554 (a case that was dismissed as part of the plea). This did not reflect an actual reduction of the 12-year sentence; it was a technical change required because the Bureau of Prisons did not

8

On July 19, 2023, the parties appeared before the Court for a plea hearing. The Court expressed concerns about the factual basis for the plea and the parties' guidelines calculation. The hearing was continued, and the parties ultimately revised the plea agreement and factual proffer. The defendant pleaded guilty to Count Four (a violation of 18 U.S.C. § 371) on July 26, 2023.

As part of the plea agreement, the parties agreed to an estimated Guideline range of between 41 to 51 months' imprisonment.[2] (*See* ECF No. 66 at 2–4). The government agreed to cap its sentencing recommendation at a term of three years' imprisonment and not to oppose the defendant's request that the sentence run concurrent to the 12-year sentence imposed in Superior Court criminal case number 2021 FD3 006773. (ECF No. 66 at 4).

Sentencing is scheduled for Friday, September 22, 2023, at 2:00 p.m. Probation completed an abbreviated presentence investigation report because a presentence report was prepared last year in connection with the defendant's Superior Court case. (ECF No. 74). On September 10, 2023, the government filed the Superior Court presentence report under seal. (ECF No. 76). The government now submits this Sentencing Memorandum.

---

credit the defendant for the time served in criminal case number 2019 CF2 008554 notwithstanding the sentencing judge's explicit directive in the judgment and commitment order. Second, as the government raised at the guilty plea hearing in this case, the Superior Court judgment and commitment order states that the sentence in that case is to run "consecutive to any other sentence being served." The parties do not read this as foreclosing the defendant's request for a concurrent sentence because the sentence in this case was not "being served" when he was sentenced in the Superior Court—indeed, the defendant had not even been charged in this case at the time. As this Court noted at the hearing, even if this Court were to agree to impose its sentence to run concurrently, the defendant may need to seek clarification of the Superior Court's judgment and commitment order should the Bureau of Prisons have a different interpretation.

[2] The parties initially calculated the guidelines as being five years, which is the statutory maximum for a violation of 18 U.S.C. § 371. (The parties' calculated range was 77 to 96 months; because it exceeded the statutory maximum, the statutory maximum became the guidelines range pursuant to U.S.S.G. §5G1.1(a).) Based on this calculation, any plea offer would necessarily involve a variance, and the government agreed to cap its sentencing recommendation at a variant three-year sentence, which is roughly equivalent to the high-end of the co-defendant's guidelines range.

9

### III. THE SENTENCING GUIDELINES

The government concurs with Probation's calculation of the total offense level as 15. (*See* ECF No. 74 at 11). Pursuant to U.S.S.G. §2X1.1, the base offense level for a violation of 18 U.S.C. § 371 on these facts is supplied by U.S.S.G. §2K2.1(a)(6)(A) and is 14. Four (4) levels are added under U.S.S.G. §2K2.1(b)(1)(B) because the offense involved at least eight (8) firearms. Finally, three (3) levels are deducted for acceptance of responsibility under U.S.S.G. §§3E1.1(a), (b). The total offense level is thus **15**.

The government also concurs with Probation's assessment of the defendant's criminal history. (*See* ECF No. 74 at 11–20). The defendant's criminal history score is 14,[3] which results in a criminal history category of **VI**.

With a total offense level of **15** and a criminal history category of **VI**, the defendant's Guideline range is **41 to 51 months' imprisonment**.

### IV. LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v.*

---

[3] The defendant's criminal history score is 12 before the addition of two (2) "status points" under current U.S.S.G. §4A1.1(d). The Sentencing Commission has adopted an amendment, scheduled to take effect on November 1, 2023, that would eliminate "status points" as they currently exist; the Commission has also voted to make the amendment retroactive. Under proposed section 4A1.1(e), a defendant will now receive only one (1) status point—but only if he has seven (7) criminal history points. Because the defendant has 12 criminal history points, he would receive an additional one (1) status point under new section 4A1.1(e), bringing his Criminal History Category to VI. The proposed amendment would thus have no effect on the defendant's Criminal History Category and guidelines range, and the defendant will not have a basis to seek modification of his sentence based on the guidelines range as it is currently calculated.

*United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> (i) issued by the Sentencing Commission ...; and
> (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
> (A) issued by the Sentencing Commission ... and
> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

## V. THE GOVERNMENT'S SENTENCING RECOMMENDATION

As stated above, the government respectfully requests that the Court sentence the defendant to a term of **36 months' imprisonment** to be followed by three years' supervised release.

### A. Nature and Circumstances of the Offense

The nature of the offense is very serious. The defendant and his co-defendant were caught because the defendant committed a violent assault with one of the guns he had obtained as part of the conspiracy. Indeed, the defendant's conduct demonstrates how dangerous firearms trafficking is, because illegally acquired guns are used by criminals to commit violent crimes.

The harm of violent crimes involving firearms is impossible to ignore because they play out in our community every day and with increasing frequency. In the three years between September 15, 2020, and the date of this filing, September 15, 2023, violent crimes committed with guns went up by 2,646 compared to the previous three years. *Crime Cards*, Metro. Police Dep't, https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited Sept. 15, 2023). Similarly, the homicide rate has skyrocketed in recent years. *See* Peter Hermann, *Homicides are falling in many big cities. In D.C., they're rising.*, Wash. Post (August 19, 2023, 9:00 a.m.), https://www.washingtonpost.com/dc-md-va/2023/08/19/dchomicides-rising-major-cities/ ("But more than halfway through this year, killings in the District are surging toward numbers not seen in two decades . . . ."). Indeed, the past two years have seen the highest homicide rates since 2003: In 2022, there were 203 homicides, and in 2021, 226 homicides. *District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison*, Metro. Police Dep't, https://mpdc.dc.gov/page/district-crime-data-glance (last visited Sept. 15, 2023). There have already been at least 190 homicides in 2023, a 28% increase from this time last year. *Id.* That number has been constantly increasing, and it will likely be even higher by the time of the

sentencing hearing next week. By comparison, in 2012, there were 88 homicides. *Id.*

The defendant necessarily contributed to this uptick in gun violence because, in 2021, he acquired over eight (8) guns in a firearms trafficking conspiracy—and then used one of them in the commission of a violent crime himself. Judges of this Court have repeatedly described firearms possession as an inherently dangerous act that places the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence"). The defendant's conduct is illustrative of why the judges of this Court have repeatedly warned about the potential for violence when someone possesses an illegal firearm.

### B. The History and Characteristics of the Defendant

As outlined in the presentence report, the defendant has numerous prior convictions for serious, violent crimes, including a 1993 conviction for armed robbery and accessory after the fact to first-degree murder while armed, a 2005 conviction for assault with a dangerous weapon, a 2012 conviction for assault with a dangerous weapon, and the 2022 conviction for assault with a dangerous weapon that gave rise to the instant case. The facts of the ADW cases are all remarkably similar, with the defendant pointing a gun at another person during an interpersonal dispute and firing one or more "warning shots" that did not strike anyone. Given the defendant's history with guns, his role in the firearms trafficking conspiracy is particularly problematic, and the defendant should receive a substantial sentence. The defendant is serving a 12-year prison term for the 2022 assault with a dangerous weapon conviction. Because that offense was facilitated by the firearms

trafficking conspiracy, the government does not oppose the defendant's request that the sentence in this case be imposed to run concurrently. 12 years in prison is sufficient but not greater than necessary to achieve the goals of sentencing in both cases.

### C. The Need for the Sentence Imposed

The government's recommended sentence is necessary for two reasons. First, it justly punishes the defendant for conspiring to obtain guns, one of which he then used in a violent crime. Second, a significant period of imprisonment will deter the defendant and others from engaging in similar conduct.

### VI. CONCLUSION

For the foregoing reasons, the government respectfully recommends that this Court sentence Defendant Donald Willis to a term of **36 months' imprisonment** to be followed by three years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

Dated: September 15, 2023    By:    */s/ Paul V. Courtney*
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street NW
Washington, D.C. 20530
(202) 252-1719
paul.courtney@usdoj.gov